# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-cr-186-1 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DAVID PECE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant David Pece ("Pece") to revoke the detention order. (Doc. No. 27 ["Mot."]; Doc. No. 28 (Supplement to Motion to Revoke ["Suppl."]).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 39 ["Opp'n"]), and Pece has filed a reply (Doc. No. 54 ["Reply"]) and a second supplement. (Doc. No. 66 (Second Supplement to Motion to Revoke ["Suppl. II"]).) Because the issues, arguments, and evidence raised in the present motion were also presented to the magistrate judge for her consideration, the Court finds that the present motion may be considered on the parties' written submissions.[1] As part of its *de novo* review, the Court reviewed the following:

(1)  Indictment in this matter (Doc. No. 1);

(2)  Pretrial Services Report—Criminal History Only (Doc. No. 5) (Sealed));

---

[1] The only evidence not before the magistrate judge is the medical documentation appended to defendant's second supplement. (*See* Doc. No. 66-1.) The aforementioned documentation shows that defendant has recently been prescribed Mycophenolate Mofetil (Cell Cept) for his Oral Lichen Planus condition. Because there appears to be no dispute that defendant is now taking this medication, or that the medication suppresses defendant's immune system, the Court finds that this new evidence does not necessitate an evidentiary hearing.

(3)   Order of Temporary Detention Pending Hearing (Doc. No. 8);

(4)   Pre-Hearing Brief filed by Pece (Doc. No. 12; Doc. No. 13 (Redacted));

(5)   Pretrial Services Report (Doc. No. 14);

(6)   Order of Detention (Doc. No. 16);

(7)   July 21, 2020 Detention Hearing Transcript (Doc. No. 20 ["TR"]) (Sealed)); and

(8)   The present motion for *de novo* review and attending briefing, exhibits, and supplements.

## I. BACKGROUND

On March 20, 2020, an indictment was filed charging Pece and four other individuals with the following: Count One—conspiracy to engage in sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e); Count Two—sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and 2; Count Three—conspiracy to receive visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); and Count Four—conspiracy to access with intent to view child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (Doc. No. 1.) At Pece's arraignment on July 14, 2020, the government moved for detention. (Doc. No. 8.) Pece was taken into custody, and on July 21, 2020, Magistrate Judge Carmen E. Henderson conducted a detention hearing, pursuant to 18 U.S.C. § 3142.

At the detention hearing, the government offered the testimony of FBI Special Agent Adam Christensen, who conducted an investigation into illegal conduct involving a website known as "Chateen." Agent Christensen testified that Pece and his co-defendants formed a sophisticated group to persuade, entice, induce, and coerce minor victims to engage in sexually

explicit conduct on webcams for the purpose of producing visual depictions of that conduct. (TR at 240–41.) Each member of the group was assigned a specific role. Pece served as a "hunter" for the group, and it was his job to visit social media sites where minors congregated, identify a victim to pursue, and persuade that victim to follow him to the chatroom. Other members of the group served as "talkers" (responsible for convincing the victims to engage in sexual conduct on camera), "loopers" (responsible for playing pre-recorded videos to convince the victims that they were minors too), and "watchers" (responsible for providing security and shielding the group's activities from authorities). (*Id*. at 240–42.) Some members of the group also recorded the videos and the chats. (*Id*. at 241.)

During the course of his investigation, SA Christensen executed a search warrant of Pece's home and also conducted interviews with Pece and Pece's father. (*Id*. at 242, 244.) According to SA Christensen, Pece admitted to coercing minors on Chateen to engage in sexual activities and to receiving sexual gratification from viewing videos of these activities. He further admitted to being aware that other members of the group were recording the videos. (*Id*. at 244.) SA Christensen further testified that a subsequent search of Pece's laptop revealed the existence of videos that met the federal definition of child pornography. He also found evidence suggesting that a forensic tool known as "Eraser" had been used on the date of the search of Pece's home to delete Skype accounts from the laptop, despite the fact that he had previously warned Pece against altering his computer in any way. (*Id*. at 243, 246.) Searches conducted on Pece's co-defendants' laptops revealed video images of Pece communicating with minor girls and engaging in sexual activity on the webcam. (*Id*. at 246.) In one such video, Pece asked a girl to remove her clothing immediately after she shared that she wanted to kill herself. (*Id*. at 248.)

Pece's mother, Laurette Keider, also testified at the hearing. She testified that Pece had been born prematurely and was, as a result, developmentally delayed. (*Id*. at 258.) Because of his premature birth, Pece also experienced numerous health problems in his childhood, including spinal meningitis, RSV, permanent hearing loss, and bronchopulmonary dysplasia. (*Id*. at 258–65.) He currently suffers from Licen planus oral, an autoimmune disease. (*Id*. at 263–64.) Ms. Keider indicated that Pece was able to obtain a degree in applied computer technology and that he currently holds a full-time position as a configuration center technician. Nevertheless, Ms. Keider testified that Pece has a low IQ and is unable to live alone or cook for himself. (*Id*. at 257–58, 264, 265–66.) She conceded that she had no idea that Pece had been involved in the conduct charged in the indictment. (*Id*. at 274.)

At the conclusion of the detention hearing, the magistrate judge concluded that although Pece presented sufficient evidence to rebut the presumption of detention created by 18 U.S.C. § 3142(e), there were no conditions that would reasonably assure the safety of any other person and the community. Specifically, the Court held:

> Mr. Pece, the Government's burden in this hearing is to prove by clear and convincing evidence that no condition will reasonably assure the safety of any person or the community, or to demonstrate by preponderance of the evidence that no condition will reasonably assure your appearance.
>
> The Court considers several factors under Section 3142(g) to determine whether or not there are conditions that will reasonably assure your appearance and the safety of the community. The first of those conditions is the nature and circumstances of the offense.
>
> The nature and circumstances of this offense, Mr. Pece, is that you are alleged to have engaged in sexually explicit conduct in conversations with minors. I understand that defense counsel has stressed that there has been no physical contact by Mr. Pece with minors. However, there has been visible conduct with those minors themselves.

4

In fact, he has – the evidence shows that he has directed minors to engage in visible conduct. It also shows that he served as a hunter and that he prayed on teens. This was not a crime of opportunity. It seems that this was a crime that he planned out. This wasn't just him running into teens but that he preyed on them to get them to engage in this conduct.

Additionally, the evidence shows that there are chats where he engaged with these teens in multiple platforms, Chateen and Skype, and directed them to do visible conduct and there's also videos of that. As the Government has stated, this is also a crime of violence.

So the nature and circumstances curry in favor of detention in this case.

Turning to the next thing the Court must consider, the weight of the evidence. The weight of the evidence in this case appears to be strong. The defendant has been indicted, an indictment has already been returned. Additionally, there were videos recovered from the computers that were seized during the search warrant. There were also Skype messages that were recovered from Microsoft despite the defendant attempting to destroy them. And there were also conversations from Chateen and videos recovered from other defendants' and coconspirators' computers.

So the weight of the evidence appears to be strong and curries (sic) in favor of detention in this case.

Next, considering the history and characteristics of the defendant.

First, the defendant is not a child. He is a grown man. He's not a boy. He's a grown man. That's been said several times and I want to make that clear. I understand that he has a lack of prior criminal history, and that has been considered in this case. I understand that he does not live alone.

However, he's clearly able to commit these offenses while living with others and able to prey on teens on a computer. Living with people has not prevented him from engaging in this behavior.

Additionally, his work also involves computers and gives him an opportunity to engage in this.

I have also considered his medical history, and it appears that he was a sick child. I do not dispute that. However, while he was a sick child, there doesn't seem to be great evidence of current conditions. The surgeries that were talked about were all surgeries of the child. He was premature. There were breathing conditions. Ear infections, which are common among many infants. RSV, which is common

> among many infants. Spinal meningitis, which was resolved in the past as a child.
>
> I also note the hearing impairment. However, despite this hearing impairment, he was able to gain an associate's degree and has been able to be productively employed. I also note the concussions that were mentioned. However, those were also things as a child.
>
> Regarding the letters from his doctors. First, regarding Exhibit G, all of the conditions are conditions that he experienced as a child. They are not current conditions. And so, while this physician has seen him for 20 years, I do not find this evidence to be particularly strong. And this evidence also does not change the fact that he would be a danger to the community.
>
> Next, talking about Exhibit H, I find that he has not seen this doctor since 2018. Therefore, I give no weight to this letter from this doctor, the dermatologist.
>
> Therefore, taking the history and characteristics of the defendant in totality, they also curry (sic) in favor of detention in this case.
>
> Next, looking at the nature and seriousness of the danger to the community, the Court finds that the defendant's conduct would be a danger to the community. As the Court has previously stated, he preyed on teenage girls to get them to engage in sexually explicit conduct, which is a clear danger. As the Government stated, he doesn't need to be big, he doesn't need to be strong to engage in that.
>
> There was evidence presented by the special agent that at one point when a teen was talking to him about suicidal tendencies, he didn't even have anything to say about that. He had one thing on his mind and that one thing was to engage in sexually explicit conduct. And I do not believe that there will be any way to prevent him from doing that and from enticing these teens except that he be detained.
>
> Therefore, the Court finds that there is no condition that will reasonably assure the safety of any person or the community and, therefore, the Court finds that the defendant will be detained for the rest of these proceedings.

(TR at 284-87.) The magistrate judge memorialized her ruling in an order of detention, filed July 21, 2020. (Doc. No. 16.)

## II. DISCUSSION

Pece now seeks review and revocation of the magistrate judge's order of detention. Title 18 U.S.C. § 3145(b) permits a defendant to seek review of a pretrial detention order of a magistrate judge. When the Court "acts on a motion to revoke or amend a magistrate judge's detention order, [it] acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992).

In this particular case the Court finds that, pursuant to 18 U.S.C. § 3142(e)(3), given the nature of the offenses charged, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(e)(3)(A). While the defendant has the burden of production to rebut the presumption, the government retains the overall burden of persuasion on a motion for detention. *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010).

In *Stone*, the Sixth Circuit Court of Appeals outlined, in detail, the standard that the Court must apply, as follows:

> Under the Bail Reform Act, 18 U.S.C. § 3142, upheld by the Supreme Court in *United States v. Salerno,* 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987), a defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A judicial officer's finding of dangerousness must be "supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(b). The default position of the law, therefore, is that a defendant should be released pending trial.
>
> That default is modified, however, for certain, particularly dangerous defendants. Specifically, when a "judicial officer finds that there is probable cause

to believe" that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3). A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged. *Hazime,* 762 F.2d at 37. Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention.

As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a "burden of production" on the defendant, and the government retains the "burden of persuasion." *See, e.g., United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001); *United States v. Portes,* 786 F.2d 758, 764 (7th Cir. 1985). A defendant satisfies his burden of production when he "com[es] forward with evidence that he does not pose a danger to the community or a risk of flight." *Mercedes,* 254 F.3d at 436. Although a defendant's burden of production "is not heavy," he must introduce at least some evidence. *United States v. Stricklin,* 932 F.2d 1353, 1355 (10th Cir. 1991); *see also United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption.").

Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes,* 254 F.3d at 436. The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. *See United States v. Jessup,* 757 F.2d 378, 384 (1st Cir. 1985), abrogated on other grounds by *United States v. O'Brien,* 895 F.2d 810 (1st Cir. 1990), ("Congress intended magistrates and judges, who typically focus only upon the particular cases before them, to take account of the more general facts that Congress found"); *see also United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir. 1986) ("[T]he presumption of dangerousness ... represents Congressional findings that certain offenders ... are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions."). To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it outside "the congressional paradigm [.]" *Jessup,* 757 F.2d at 387.

Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community. In determining whether the

government has met that burden of persuasion, the court must consider certain factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, ... a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g). However, consideration of these factors shall not be construed to modify or limit the presumption of innocence. 18 U.S.C. § 3142(j).

*Stone*, 608 F.3d at 945–46.

### A.     **Nature and Circumstances of the Offenses Charged**

Beginning with the first factor, there is no question that the offenses with which Pece is charged are serious in nature and involve circumstances that endanger the community. He is charged in a conspiracy to sexually exploit children. As the magistrate judge noted, these were not crimes of opportunity, but, instead, they were part of a coordinated effort by several individuals to produce sexually explicit visual depictions of children. Understandably, these crimes carry with them hefty sanctions. Counts One and Two each require a mandatory

9

minimum sentence of fifteen years imprisonment, Count Three carries a five-year mandatory minimum sentence, and Count Four carries a maximum sentence of ten years.

And while defense counsel notes that Pece is not alleged to have had any physical contact with his victims, all of the crimes for which he is charged are considered "crimes of violence" under the Bail Reform Act. *See* 18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" as used in 18 U.S.C. § 3142 as including offenses under 18 U.S.C. § 2252A). More to the point, sexual exploitation of children via the internet, even without physical contact, harms children in real and lasting ways. *See New York v. Ferber*, 458 U.S. 747, 758–59, & nn.9–10, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982) (quoting studies finding that "sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults").

### B. **The Weight of the Evidence against Pece**

The evidence against Pece is substantial and strongly favors pretrial detention. Evidence located on Pece's laptop allegedly directly connects Pece with the conspiracy that is charged in the indictment. Images found on the computers of Pece's co-defendants also apparently show Pece interacting with minors in sexually inappropriate ways. Additionally, Pece has allegedly admitted to coercing minors on Chateen to engage in sexual activities and to receiving sexual gratification from viewing the videos of these activities.

### C. **History and Characteristics of Pece**

With the exception of a period of time in college when he lived away from home, the record reflects that defendant has always resided with one or both of his parents, and that he has the support of them and other members of his family. He also has a full-time job, and no prior

criminal history. While the Court weighs these facts in its analysis, they have little bearing on the ultimate question of whether there exists a condition or combination of conditions of release that will reasonably assure the safety of another person or the community. The fact remains that Pece is charged with having committed these crimes while residing in his father's home, unbeknownst to his mother (and presumably, though there is no testimony on this point, his father). (TR at 274.) While defense counsel notes that Pece cooperated with the FBI and submitted to an interview, there is also evidence that, after he knew about the FBI investigation—and may have even been warned against altering his computer in any way—attempted to delete files tying him to the conspiracy.

Pece's medical condition, however, gives the Court some pause. Defense counsel takes issues with the magistrate judge's treatment of Pece's medical problems as having existed solely in his childhood, insisting that Pece's health issues are "current and serious." (Reply at 457.) They point to letters from treating physicians highlighting his medical conditions, including Licen Planus Oral. They point to evidence showing that this is an autoimmune condition that has flared up recently, and that it has rendered Pece especially vulnerable to the current health crisis surrounding COVID-19. In the reply, counsel argued that Pece had been unable to acquire the "correct medication" since he was taken into custody. (Reply at 457–58.) In the recently filed second supplement, counsel advise that Pece has since been prescribed Mycophenolate Mofetil, but report that one of the side effects of this medication is that it weakens the immune system. (Suppl. II at 500.) Citing the unique challenges the pandemic has posed in the custodial setting, and highlighting what they characterize as prison officials' failure to adequately contain the virus within Pece's institution, they argue that Pece's medical condition has left him particularly

vulnerable to serious complications should he contract COVID-19.

While most of the evidence offered by the defense is limited to medical ailments and conditions he experienced as a child, there is at least some evidence that his current medical condition renders him at risk of serious complications due to COVID-19. The Court agrees that Pece's present medical condition presents at least some evidence that weighs in favor of pretrial release.

### D. Danger to Any Person or the Community

The nature and seriousness of the danger to any person or the community that would be posed by Pece's release weigh strongly in favor of detention. From the privacy of his home, Pece is alleged to have sexually exploited children for the purpose creating and preserving a visual recording of the exploitation. While Pece underscores the fact that he had no physical contact with his victims, his alleged actions likely have resulted in very real and devastating consequences for his child victims. As Congress has observed, "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, 110 Stat. at 3009-27 (codified at 18 U.S.C. § 2551); *see Ferber*, 458 U.S. at 760 n.10 (1982) (discussing the long-term psychological, emotional, and mental difficulties of children who have been sexually exploited: "[P]ornography poses even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass

distribution system for child pornography…. It is the fear of exposure and the tension of keeping the act a secret that seems to have the most profound emotional repercussions.") Moreover, possessors of child pornography aid in creating and sustaining a market for such material. *See Berger v. Ryan*, No. 09-cv-2689, 2011 WL 2690436, at *15 (D. Ariz. July 11, 2011), *report and recommendation adopted by* 2011 WL 3875853 (D. Ariz. Sept. 2, 2011).

Of course, not every child pornography/exploitation case will warrant pretrial detention. *See United States v. Reiner*, 468 F. Supp. 2d 393, 398 (E.D.N.Y. 2006). But the Court will not disregard the very real danger Pece poses should he be released simply because he did not have any physical contact with his child victims. The evidence shows that, even without physical contact, Pece is alleged to have contemporaneously directed real minors to engage in visible sexual conduct for the purpose of creating a visual depiction of that conduct. The fallout from his alleged actions will likely have lasting repercussions for his victims, and the potential that Pece could repeat his actions weighs heavily against pretrial release. Further, the disregard with which he allegedly showed his victims, as evidenced by the minor who shared her thoughts of suicide and Pece's callous response, demonstrates the danger Pece poses to future victims should he be released.

E. **Conditions to Reasonably Assure the Safety of Persons and the Community**

Based on its *de novo* review, the Court finds that the record establishes by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community. In reaching this decision, the Court has considered whether there are any measures that can be put in place to protect the public, given the crimes with which Pece is charged. The Court agrees with the government that the fact that Pece was

able to commit these alleged crimes from the privacy of the very residence he wishes to be returned—where he obviously has internet access—is most concerning.

Pece suggests that any safety concerns can be addressed "by ordering him to have no internet access." (Reply at 459.) Courts have repeatedly noted that, generally, prohibiting internet access to someone on release is "a near impossibility given the internet's ubiquitous presence[.]" *See United States v. Galvan*, No. 3:20-cr-19, 2020 WL 4604502, at *6 (S.D. Tex. Aug. 11, 2020) (rejecting similar argument and citing *United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007)). The task here would be even less likely to succeed, given the fact that Pece has a degree in applied computer technology, a job that gives him access to computers, and the knowledge (and apparent willingness) to utilize computer technology to destroy or conceal evidence of his activity on the internet. Moreover, Pece's "*modus operandi*"—namely, trolling teen websites for potential victims---"does not even require the internet, as one can access social media with a smartphone and cell service." *Galvan*, 2011 WL 4604502, at *6 (footnote omitted).

The Court sympathizes with Pece, given his medical conditions and the unique risks these conditions pose for those incarcerated during this global health crisis, but based upon the factors the Court must consider, the Court concludes that there are no conditions that can reasonably assure the safety of any person or the community.

### III. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the government's response, the Court finds that the government has demonstrated by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community or other persons. Accordingly, the motion of defendant Pece to revoke the detention order is

DENIED.

    **IT IS SO ORDERED**.

Dated: October 23, 2020

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**